IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-02429-REB-BNB

VERNON RAUCH, an individual, and
RAUCH MANUFACTURING, INC., an Idaho corporation,

Plaintiffs,

v.

JOHN P. SUTPHIN, JR., an individual, and
SUTPHIN ELECTRIC MOTORS, CORP., a Colorado corporation,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the following:

(1)     Defendants' **Motion to Dismiss** [Doc. # 56, filed 11/6/2006] which seeks an order

enforcing a settlement placed on the record on August 7, 2006 (the "*Motion to Enforce*

*Settlement*"), following a settlement conference; and

(2)     **Plaintiffs' Motion to Return Case to the Trial Calendar** [Doc. # 59, filed

11/10/2006] which seeks an order finding that the settlement placed on the record is

unenforceable due to a mutual mistake of fact ( the "*Motion to Set Aside*").

For the reasons stated below, I respectfully RECOMMEND that the *Motion to Enforce*

*Settlement* be GRANTED and the *Motion to Set Aside* be DENIED.

This is a patent infringement case concerning a patent for a "motorized wrench for

spinning together (or apart) lengths of drill pipe as typically used in water well drilling."  *First*

*Amended Complaint for Patent Infringement, Trademark Infringement, and Unfair Competition*

[Doc. # 22, filed 4/4/2006] at Exh.1, p.1, column 2 (the "*372 Patent*").  I held a settlement conference in this case on August 7, 2006.  At the conclusion of the settlement conference, it appeared that the parties had reached an agreement, which was placed on the record.  The transcript of proceedings on August 7, 2006 [Doc. # 51, filed 10/3/2006] (the "*Transcript*"), discloses the following exchange concerning the apparent settlement:

> THE COURT:      We're here this afternoon in Case No. 05-2429, Rauch against Sutphin in connection with a settlement conference.  We've been engaged in a settlement conference and a resolution of the case has been reached.  So what I'd like to do now is to have each of the lawyers enter his appearance and introduce your client.  And then, Mr. Wills, if you would state the terms of the settlement for the record.
>
> Once he's done that, Mr. Pedersen, I'll give you an opportunity to make any modifications, corrections or changes which you think are necessary, and once we have the terms of the settlement stated for the record, I'll ask each client to confirm that you've heard the settlement, that you understand the terms and that you accept them.
>
> So, I'll start with you, Mr. Pedersen. May I have an appearance, please.
>
> MR. PEDERSEN:      Yes.  Your Honor, for the plaintiff, Vernon Rauch, individually, and Rauch Manufacturing, Inc., Ken J. Pedersen from Boise, Idaho.
>
> THE COURT:      Thank you.
>
> MR. PEDERSEN:      And with me, Your Honor, is Vernon Rauch himself.
>
> THE COURT:      Thank you.
>
> MR. WILLS:      Thank you, Your Honor.  Drew Wills appearing for the defendants.  The defendants being John P. Sutphin, Jr., and Sutphin Electric Corporation.  John P. Sutphin, Jr., is present today and participated in the settlement conference.

THE COURT:          Thank you.  So now, Mr. Wills, if you would please state the terms of the settlement.

MR. WILLS:          The defendants will pay--and this--these funds will [be] coming from Sutphin Electric Motors Corporation--$75,000.  In addition to that, the defendants will pay a license fee for the life of the 372 patent of $10,000.  That will be an annual fee which will be paid in advance of each annual license period.  That will allow Sutphin Electric Motors Corporation to practice the art of the 372 patent, except that Sutphin will be practicing that art exclusively for hydraulic motors with air or hydraulic actuators, but does not intend to practice nor will it practice that patent with respect to air driven motors.

That license will also allow it to produce 40 units per year.  That license agreement is to be cancellable at any time by Sutphin.  It is also to be transferable with the sale of the corporation, again, for the life of the patent.  There will be no other third-party licensees.  The plaintiff in this case, Rauch, will return the two tools that have been returned to it from General Pump and Clements Pump.  Each of the units that are produced by Sutphin will contain a serial number and also a tag which reflects the license from Rauch of the 372 patent.

There will be no specific terms on the purchase of parts from Rauch if Sutphin does need to purchase parts from Rauch for the manufacture of these units.  There will be no enablement information or actual aid from Rauch.  Sutphin will enter into the consent decree as specified in the offer that was made to Sutphin several days ago.  That consent decree contains--will contain the consent that the patent is valid and that there has been an infringement of the patent.  Also that the trademark is valid, and there's been an infringement of the trademark.

Sutphin will provide a list of sales on an annual basis of the 40 tools that it produces, and this case will be dismissed with prejudice.

Did I miss anything, Counsel?

THE COURT:          Any modifications, additions or changes, Mr. Pedersen?

MR. PEDERSEN:          Your Honor, if I may just have a second with

my client?

(Pause) Did we have--Counsel, if I may inquire, did we have an understanding about the list of sales being subject to an audit?

MR. WILLS:          I do recall discussing that, and I don't think that that's a problem.

MR. PEDERSEN:     Okay.

MR. WILLS:          So if you would like to include the ability of an annual audit, the defendant is agreeable to that.

MR. PEDERSEN:     Let it be at plaintiffs' expense, unless discrepancy of more than ten percent is detected in the audit. Would that be agreeable?

MR. WELLS:          Yes.

MR. PEDERSEN:     Very well, Your Honor.  We have nothing further.

THE COURT:          Okay.  With the settlement as it's been stated and modified.  Mr. Rauch, did you hear the terms of the settlement?

MR. RAUCH:          Yes.

THE COURT:          Do you understand those terms?

MR. RAUCH:          Yes.

THE COURT:          And are they acceptable to you and to Rauch Manufacturing?

MR. RAUCH:          Correct, yes.

THE COURT:          Thank you.

Mr. Sutphin, did you hear the terms?

MR. SUTPHIN:       Yes, sir.

THE COURT:          Do you understand them?

> MR. SUTPHIN:          Yes, sir.
>
> THE COURT:           And are they acceptable to you and to Sutphin Electric Motors Corp.?
>
> MR. SUTPHIN:          Yes, sir.
>
> THE COURT:           Thank you all very much.  I'll enter an order requiring that the case be dismissed within two weeks of today.

*Transcript*, p.2 line 5 through p.6 line 8.

A problem arose as the parties attempted to reduce the settlement agreement to writing.

According to the plaintiff:

> Subsequently, while attempting to finalize the license agreement, Plaintiffs realized they were not in agreement with Defendants regarding an important provision of the license.
>
> Specifically, during negotiations Vernon Rauch made a clear statement to the Magistrate Judge and Plaintiffs' counsel that the proposed license was to be limited to permission for Defendants to practice only the RAUCH pipe spinner models #512H and #616.
>
> RAUCH believed a clear statement was necessary because, previously, both the Magistrate Judge and Plaintiffs' counsel understood RAUCH to be negotiating for a broader license. . . .
>
> Therefore, RAUCH understood this #512H and #616 models license limitation to be relayed to Defendants and, when Defendants indicated agreement to the settlement, to be part of the license agreement.
>
> However, when working with counsel to prepare the license agreement, RAUCH learned that this license limitation was not on the list of provisions Defendants were prepared to accept.
>
> Apparently, the license limitation was not relayed to Defendants or, if relayed, was misunderstood, forgotten, or suppressed.
>
> Subsequently, RAUCH has indicated any settlement without this #512H and #616 models license limit provision is unacceptable, and

> Defendants have indicated any settlement with this provision is
> unacceptable.
>
> Therefore, apparently there was not a "meeting of the minds" of the
> parties on this provision at the settlement conference.

*Plaintiffs' Memorandum in Support of Their Motion to Return Case to the Trial Calendar* [Doc.

# 60, filed 11/10/2006] (the "*Plaintiffs' Memorandum*") at ¶¶5-12.

The plaintiffs claim that there was a mutual mistake of fact.  In particular, the plaintiffs

argue that the parties mutually were mistaken with respect to whether their agreement concerned

a license of the '372 Patent (1) limited to the models #512H and #616 embodiments of the patent,

as the plaintiffs claim; or (2) to the practice of the patent generally, not just two of its

embodiments, but limited to "hydraulic motors with air or hydraulic actuators, but . . . not . . . to

practice . . . that patent with respect to air driven motors," as was stated on the record at the time

of the settlement conference.  The plaintiffs seek relief to "set aside the settlement conference

agreement, and return this case to the Court's trial calendar."  *Plaintiffs' Memorandum* at p.4.

The defendants assert that there was no mistake; that the *Transcript* accurately reflects the

agreement of the parties; and that the agreement as reflected in the *Transcript* should be enforced.

*Defendants' Response In Opposition to Plaintiffs' Motion to Return Case to the Trial Calendar*

[Doc. # 64, filed 11/22/2006] (the *"Defendants' Response"*) at ¶¶3, 5, and 8.

A settlement agreement is a contract between the parties.  Citywide Bank of Denver v.

Herman, 978 F. Supp. 966, 977 (D. Colo. 1997).  The law favors compromise and settlement, and

settlements will be enforced by the court.  Id.; City and County of Denver v. Adolph Coors Co.,

813 F. Supp. 1476, 1479 (D. Colo. 1993).  A trial court has the power, while a case is pending

before it, summarily to enforce the settlement of the parties.  United States v. Hardage, 982 F.2d

1491, 1496 (10th Cir. 1993).

The court must apply state contract law to issues involving the formation, construction, and enforcement of a settlement agreement. United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000). Under Colorado law, a settlement agreement does not have to be in writing to be enforced, Citywide Bank of Denver, 978 F. Supp. at 977 (applying Colorado law); DiFrancesco v. Particle Interconnect Corp., 39 P.3d 1243, 1248 (Colo. App. 2001), but its terms must be clear, unambiguous, and capable of enforcement. Adolph Coors, 813 F. Supp. at 1479. Normally, the construction of a contract is a question of law for the court. Florom v. Elliott Mfg., 867 F.2d 570, 575 (10th Cir. 1989). "Unless the words used by the parties to express their agreement are found to be ambiguous in some material respect, the court should give them legal effect according to their plain, ordinary and popular meaning." Id.

A party who knowingly and voluntarily authorizes the settlement of his claims cannot avoid the terms of the settlement simply because he has changed his mind. Woods v. Denver Dept. of Revenue, 45 F.3d 377, 378 (10th Cir. 1995). Nor can a contract be rescinded or avoided because one party made a unilateral mistake concerning a contract term. In re Marriage of Manzo, 659 P.2d 669, 672 (Colo. 1983). Rather, "[i]n order to avoid a contract on the ground of mistake, it must be a mutual mistake." Kuper v. Scroggins, 257 P.2d 412, 419 (Colo. 1953).

This case is substantially identical to Royal v. Colorado State Personnel Board, 690 P.2d 253 (Colo. App. 1984). In Royal, the plaintiff was terminated from his employment, and he appealed that termination. The parties reached a settlement of their dispute during the appeal, and the terms of the settlement were dictated into the record by the plaintiff's lawyer. The Colorado Court of Appeals upheld and enforced the settlement as stated on the record, holding:

7

> The terms of the stipulation as dictated into the record by Royal's counsel are clear and unambiguous.
>
> *       *       *
>
> What Royal may have understood or contemplated is not relevant. A unilateral mistake or mistake of law, if any, is not a ground for setting aside an agreement.  And, there is nothing to indicate that there was any mutual mistake here.
>
> In view of the unequivocal affirmative answers he made to his counsel and to the hearing officer at the time the stipulation was being dictated into the record, it appears that what really happened was that Royal changed his mind after he initially agreed to the terms thereof.  But, later dissatisfaction with the terms of a stipulated compromise agreement is not sufficient grounds to set it aside.  The agreement is enforceable in accordance with the terms as dictated.

Id. at 255 (internal citations omitted).

Similarly in this case, the terms of the settlement were stated on the record.  Those terms are clear and unambiguous.  There is no indication of any mutual mistake in connection with the settlement.  To the contrary, the defendants argue that the agreement as stated on the record is the agreement of the parties, and they seek an order enforcing that agreement.  *Defendant's Response* at ¶8 (stating that "the settlement terms were specifically enunciated on the record, agreed to by all parties in the presence of counsel and made an order of the Court.  There was no mistake").  Here, as in the Royal case, what Mr. Rauch may have understood or contemplated is not relevant.

Mr. Rauch's claim of mutual mistake is simply untenable in view of the record made in open court.  The agreement of the parties, including particularly the defendants' right to "practice the art of the '372 patent," *Transcript* at p.3 lines 16-17, could not be more clear.  Mr. Rauch was represented by experienced patent counsel at the settlement conference; indeed, he was

8

represented by the very attorney who represented him before the Patent and Trademark Office and who secured the '372 patent for him.  See *'372 Patent* at p.1.  The plaintiffs' counsel was allowed to make any modifications, corrections, or changes to the settlement agreement as it was stated on the record by counsel for the defense, and he made one, unrelated correction.  Mr. Rauch was asked whether he had heard the terms of the settlement agreement, to which he answered yes; whether he understood the terms of the settlement, to which he answered yes; and whether the settlement was acceptable, to which he answered "[c]orrect, yes." *Transcript* at p.5 lines14-22.

The plaintiffs argue that "[a]pparently the license limitation was not relayed to [defendants] or, if relayed, was misunderstood, forgotten, or suppressed," and that "if a mistake in transmission of an offer is made by an intermediary, possibly no contract is formed." *Plaintiffs' Memorandum* at p.2.  The argument misses the point.  In this case, the parties and their lawyers stood in the same room; their agreement was recited; and each side was allowed to make any additions or corrections they believed to be necessary.  The entire exchange, including the parties' assent to the agreement as stated, was recorded by an audio recorder and has been reduced to writing in the *Transcript*.  Under these facts, the issue of what was said by each side in their separate caucuses and what was conveyed by the intermediary between the parties is irrelevant. See Adolph Coors, 813 F. Supp. at 1480 (stating that a party's unilateral understanding or intent is immaterial).  "'Mutual assent is to be judged only by overt acts and words rather than by the hidden or secret intention of the parties.'" Id. (quoting 1 S. Williston, A TREATISE ON THE LAW OF CONTRACT § 4.1 (4th ed. 1990)).

Nor is there any need here for an evidentiary hearing concerning the formation of the settlement agreement or its terms.  The facts concerning the formation and acceptance of the settlement agreement and its terms are recorded in the *Transcript*.  Here, as in the <u>Adolph Coors</u> case:

> [T]he opportunity for cross-examination afforded in a hearing would not aid [p]laintiffs because we come to our decision based on our interpretation, as a matter of law, of [p]laintiffs' own representations . . ., and not on any allegations of [the defendant] that could fruitfully be attacked on cross-examination.

<u>Adolph Coors</u>, 813 F. Supp. at 1482.

The settlement agreement as stated on the record is clear and unambiguous.  There is no indication that there was any mutual mistake of fact in connection with the terms of the agreement.  Under these facts, the settlement agreement as stated on the record on August 7, 2006, should be enforced according to its terms.

I respectfully RECOMMEND that the *Motion to Enforce Settlement* be GRANTED and that the *Motion to Set Aside* be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  <u>In re Key Energy Resources Inc.</u>, 230 F.3d 1197, 1199-1200 (10th Cir 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review

by the district court or for appellate review.  <u>United States v. One Parcel of Real Property</u>, 73

F.3d 1057, 1060 (10th Cir. 1996).

    Dated December 13, 2006.

                                         BY THE COURT:

                                         <u> s/ Boyd N. Boland                 </u>
                                         United States Magistrate Judge